UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| VERA M. WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18-cv-0008-SNLJ |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The Commissioner of the Social Security Administration denied plaintiff Vera Wilson's applications for disability insurance benefits and supplemental security income benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Wilson now seeks judicial review. The Commissioner opposes the motion, Wilson filed a reply, and, being fully briefed, the issue is ripe for determination. For the reasons set forth, the Commissioner's decision is **AFFIRMED**.

I.  **Procedural History**

Wilson's application was denied at the initial determination level. She then appeared before an Administrative Law Judge ("ALJ"). The ALJ found Wilson is not disabled because she can perform work that exists in substantial numbers in the national economy. Wilson then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration. The Appeals Council denied review.

1

Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Wilson now seeks review by this Court pursuant to 42 U.S.C. § 405(g).

## II.     Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to

a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical

opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. The ALJ's Decision

At Step One, the ALJ found Wilson met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity since December

4

15, 2011.. (Tr. 7-8). At Step Two, the ALJ found Wilson suffers from nine severe physical impairments: (1) degenerative disc disease; (2) sacroilitis; (3) lumbar spondylosis; (4) fibromyalgia / chronic pain syndrome; (5) diabetes; (6) obesity; (7) borderline intellectual functioning; (8) depression; and (9) anxiety. (Tr. 8). At Step Three, the ALJ concluded Wilson does not have an impairment or combination of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 8).

Next, in beginning the analysis of Step Four, the ALJ determined Wilson's RFC.[1] The ALJ found that Wilson

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with a sit/stand option allowing a change in position every 30 to 60 minutes for a few minutes at a time while remaining at the work station with no loss in production contemplated. She can perform work that does not require climbing on ropes, ladders, and scaffolds, and no more than occasional climbing on ramps and stairs, balancing, stooping, kneeling, crouching or crawling, and should avoid concentrated exposure to temperature extremes, vibration and work hazards such as unprotected heights and being around dangerous moving machinery. She is able to understand, remember, and carry out simple instructions and perform repetitive tasks consistent with unskilled work. She can perform only simple decision making related to basic work functions. The claimant can tolerate only minor, infrequent changes within the workplace.

(Tr. 12). As part of this determination, the ALJ found Wilson's allegations about her symptoms' intensity, persistence, and limiting effects are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 13-16). The ALJ recognized

---

[1] In the past, there has been some confusion as to when the RFC is determined, which affects who holds the burden of proof in establishing an appropriate RFC. In this Circuit, it has been held that "the RFC is used at both step four and five of the evaluation process, but it is determined at step four, where the burden of proof rests with the claimant." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (*quoting Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000)).

5

Wilson's subjective pain, her obesity, and her borderline intellectual functioning, but found the record—as a whole—was inconsistent as to the limiting effect of these issues. The ALJ noted several references by medical providers of "exaggerated responses" to pain and highlighted observational inconsistencies between providers such as records that mentioned Wilson "limping" juxtaposed with records observing Wilson's "normal gait" and ability to move around unassisted. The ALJ further found that, as recently as 2017, Wilson admitted to "walk daily" and would go to the public pool; she would also perform a variety of household chores. Related to Wilson's intellectual function, the ALJ remarked on Wilson's prior employment as a certified nurse's assistant and noted the "ample documentation" inconsistent with a conclusion that Wilson suffered sub-average intellectual functioning, including one provider who mentioned the possibility that Wilson was simply "overmedicated" rather than mentally impaired. Finally, the ALJ referenced the fact that not a single provider observed that Wilson's obesity precluded her from performing light work. (Tr. 9-16).

With an RFC determination in hand, the ALJ continued on through Step Four to determine whether Wilson can perform her past relevant work given her designated RFC. The ALJ determined that Wilson cannot perform any past relevant work. (Tr. 18).

At Step Five, the ALJ analyzed whether Wilson can successfully adjust to other work. The ALJ noted that if Wilson had the RFC to perform the full range of light work—in other words, if Wilson's RFC matched perfectly with the light work Medical-Vocational Guidelines (the "Grids")—then the Grids would direct a finding of not disabled; but, additional limitations impede Wilson's ability to perform all or

substantially all of the light work requirements. Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Wilson's occupational base to perform light work. The VE testified Wilson is able to perform work as a ticket taker, rental clerk, and parking lot attendant, even after considering all of the limitations in Wilson's RFC. (Tr. 19). The ALJ then found these jobs exist in significant numbers in the national economy and concluded Wilson is not disabled. (Tr. 20).

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and

7

even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

**V. Discussion**

Wilson makes three arguments in her brief. First, Wilson believes the ALJ should have given the opinions of a particular doctor—Dr. Aaron Trone—controlling weight, but failed to do so. Second, Wilson argues the ALJ failed to proper analyze the limiting effects of her fibromyalgia, chronic pain, and obesity. And, third, Wilson asserts the ALJ failed to appropriately develop the record when refusing to order an IQ Test to determine Wilson's intellectual capacity.

These three arguments are taken in turn.

**A. The ALJ Properly Exercised Her Discretion in Limiting the Weight of Dr. Aaron Trone.**

The ALJ gave "little weight" to Wilson's treating physician, Dr. Aaron Trone. The reason for giving "little weight" to Dr. Trone was because his "opinion is presented in a check-box format" with "minimal narrative support for the limitations assessed." Furthermore, the ALJ was concerned that Dr. Trone's conclusions "appear to be inconsistent with [his] own treatment notes." The ALJ also indicated "the most recent medical records show normal physical examinations as recently as June 2014." (Tr. 17).

Wilson argues the ALJ ignored three years of additional treatment notes from Dr. Trone that occurred after this case was remanded to the ALJ for further proceedings upon

the request of the Commissioner.[2] Wilson states the ALJ "just cut and pasted what she said about Dr. Trone in her first decision." It is unclear whether the ALJ considered the more recent records of Dr. Trone, though from the phrasing of the ALJ's decision it does appear the ALJ's statements regarding Dr. Trone were not updated since the issuance of the first decision. Indeed, elsewhere in the ALJ's decision she cites numerous records from 2017 in refuting Wilson's characterization of disabling pain; it is curious, then, that the ALJ states she gave "little weight" to Dr. Trone based on a comparison of "the most recent medical records" from 2014.

In any event, a review of Dr. Trone's most recent records reveals the ALJ's original criticisms still stand. For example, Wilson tells the Court that the ALJ "failed to note that Dr. Trone renewed his opinion on April 10, 2017[,] that [Wilson's] conditions and limitations had not improved." Yet, that so-called renewal was a one-line statement by Dr. Trone essentially agreeing with his initial decision found in the same check-box form that the ALJ found inappropriate in her first review. The ALJ was originally concerned about the lack of narrative support, which Dr. Trone did not cure with a one-line statement expressing that his opinion remains the same. (*See* Tr. 2352-2356). Wilson also points out that Dr. Trone noted in June, 2016, that Wilson reported back pain of 8

---

[2] On April 29, 2016, this Court remanded a claim based on an application dated May 13, 2013. As the Commissioner explained it, remand was sought because the "hearing decision, which covered the period January 1, 2011, through September 25, 2014, partially invaded the period of a prior ALJ hearing decision, which covered the period November 1, 2007, through December 14, 2011." *Wilson v. Colvin*, Case No. 2:16-cv-14-JAR, Doc. #12. The May 13, 2013, application was ultimately consolidated with another application dated November 26, 2014, which the ALJ ruled upon on October 13, 2017—the decision currently before the Court. The effect of the remand was to permit Wilson to provide additional, more recent medical documentation to the ALJ, which appears to have been considered in large part—the ALJ referenced several medical records from 2017.

9

out of 10. (Tr. 2339). Yet, once again, that specific record conflicts with the record as a whole where the ALJ also noted that just a few months later, in September 2016, another doctor noted Wilson's "exaggerated pain response" in her back. (Tr. 2195). The Court further notes that, similar to the concerned voice by the ALJ, Dr. Trone's records appear somewhat inconsistent when he repeatedly describes Wilson's back pain as "moderate" yet later declares Wilson may "never" twist, stoop, crouch, or climb because of "pain in the back." (Tr. 2312, 2327, 2352, 2354). In fact, in several follow-up visits interspersed with the visits mentioning "moderate" back pain, there is no mention of back pain at all and Dr. Trone does not appear to palpate the back to monitor its progress. (Tr. 2320-2325). These records are further juxtaposed with other provider records that found "no spine tenderness" as recently as February, 2017, and highlight Wilson's own acknowledgement that she "walks daily even when it is hot" as recently as June, 2017. (Tr. 2386, 2411).

Simply put, while the opinions of treating physicians are usually entitled to great or even controlling weight, the ALJ nonetheless has discretion in discounting those opinions where "good reasons" are given for doing so. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). These "good reasons" include where other medical assessments are more thorough, where the treating physician renders inconsistent opinions that undermines his or her own credibility, and where other medical records and the claimant's own activities are —on balance—in disagreement with the treating physician. *Id*. at 1013-1014 (holding that the ALJ was within their discretion to discount the opinions of a treating physician where such opinions were inconsistent with the opinions

of at least three other physicians); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ was within his discretion in discounting opinions of treating physician where such opinions did not align with the daily activities of the claimant). After reviewing the record, this Court is satisfied that the ALJ was acting within her discretion when choosing to discount Dr. Trone's opinions, which appear both internally inconsistent and inconsistent with the total record. *See Gregory v. Commissioner*, -- Fed.Appx. --, 2018 WL 3486885 at *2 (8th Cir. Jul. 19, 2018) (holding that the ALJ was within their discretion in discounting opinions of treating physician where such opinions were inconsistent with the medical records as a whole).

> **B. The ALJ Appropriately Evaluated the Limiting Effects of Wilson's Fibromyalgia, Chronic Pain, and Obesity.**

Wilson is also critical that the ALJ mentioned her fibromyalgia, chronic pain, and obesity, without also referencing the limiting effects of these conditions for purposes of determining Wilsons' RFC. However, the record reveals that the ALJ did, in fact, acknowledge Wilson's fibromyalgia, chronic pain, and obesity—calling them severe impairments and considering their limiting potential in formulating an appropriate RFC— but nonetheless found that the record, taken as a whole, revealed that none prevented Wilson from engaging in light work. (Tr. 13-16). Indeed, the ALJ exhaustively considered, for example, Wilson's continuous treatment for fibromyalgia and chronic back pain and contrasted this treatment with other evidence such as Wilson's acknowledgment that medication controls her symptoms, her acknowledgment that she walks daily, evidence that she performs household chores, and the fact that the records

11

demonstrate numerous inconsistencies as relates to pain—with several providers indicating that Wilson may be "exaggerating" her pain. (*Id*.). As far as Wilson's obesity, the ALJ acknowledged that it would have some limiting effect, but—in refusing to find it outright disabling—highlighted no provider had indicated it would be an impediment to light work.

Contrary to Wilson's suggestion, the ALJ did consider, and appropriately weighed, the limiting effect of Wilson's ailments. The record adequately supports the ALJ's conclusion that Wilson's ailments, balanced against the record as a whole, failed to demonstrate the level of severity necessary to find in favor of outright disability. *See Heino v. Astrue*, 578 F.3d 873, 881-882 (8th Cir. 2009) (ALJ appropriately considered claimant's obesity where "ALJ made numerous references on the record to [claimant's] obesity" and took it into account generally in formulating an RFC); *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (ALJ appropriately analyzed claimant's fibromyalgia and did not err in discounting the severity of it where treatment records indicated sporadic treatment and emphasized other ailments that did not suggest the severity urged by claimant); *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005) (ALJ appropriately discounted claimant's subjective complaints of chronic back pain where record demonstrated inconsistencies such as claimant's normal range of motion and the fact that medication controlled the pain); *White v. Colvin*, 2014 WL 4851823 at *13 (E.D. Mo. Sept. 29, 2014) (ALJ did not err, despite not specifically citing SSR 02-01p concerning obesity, when concluding under the totality of the evidence that claimant's obesity presented no noteworthy secondary problems).

### C. The ALJ Properly Exercised Her Discretion in Refusing to Order an IQ Test to Determine Wilson's Intellectual Capacity.

Finally, Wilson takes issue with the fact that the ALJ did not order an IQ test. The ALJ did not order an IQ test because she believed there was ample documentation in the record of claimant's intellectual capacity. The ALJ also noted that claimant had previously worked as a certified nurse's assistant, "an occupation not indicative of the cognitive issues alleged." Moreover, the ALJ believed the record abundantly demonstrated that Wilson was capable of day-to-day activities like playing video games and puzzle books, performing household chores, cooking, and riding ATVs, which were incongruent with the intellectual impairment urged by Wilson. (Tr. 6).

Wilson seems to suggest an IQ test should have been mandatory because there was at least some indication of her intellectual impairment in the record; to the contrary, an ALJ is empowered within his or her discretion to fully disregard an IQ test (even if one had been ordered) to the extent it is inconsistent with a claimant's demonstrated abilities and the record as a whole. *See Channell v. Colvin*, 756 F.3d 605, 608 (8th Cir. 2014). Indeed, the U.S. Supreme Court has cautioned that "intellectual disability is a condition, not a number" and notes that IQ tests are imprecise and, thus, not dispositive in themselves. *Hall v. Florida*, 134 S.Ct. 1986, 2001 (2014); *see also Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998) (noting that the Eighth Circuit "must affirm" the decision of an ALJ who disregards an IQ test because it is deemed "unreliable" in view of competing evidence). Ergo, the Eighth Circuit has found that the ability to perform daily activities—like those identified by the ALJ in this case—such as cooking, performing

household chores, reading, writing, shopping, and grooming one's self, along with mental evaluation records that indicate only borderline developmental impairments, is sufficient to permit an ALJ to find a claimant is not disabled notwithstanding the existence of low IQ scores. *See Vance v. Berryhill*, 860 F.3d 1114, 1119-1120 (8th Cir. 2017). Wilson points to no substantial reason why the record would otherwise compel the ALJ to order an IQ test or why, if compelled, an IQ test would have changed the outcome. Instead, it reveals the ALJ appropriately considered Wilson's daily activities and medical records (demonstrating relatively mild intellectual impairment) as reasons why an IQ test was simply unnecessary. (Tr. 6, 9-12). The ALJ did not err in refusing to order an IQ test.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint (#1) is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

So ordered this 29th day of October 2018.

                                                                    _/s/ Stephen N. Limbaugh, Jr._
                                                                    STEPHEN N. LIMBAUGH, JR.
                                                                    UNITED STATES DISTRICT JUDGE